THEODORE T. WOLD, *d. b. a.* MIDWEST HOTEL SALES COMPANY, v. HELEN A. PATTERSON AND ANOTHER, COPARTNERS *d. b. a.* GARDNER HOTEL.[1]

August 12, 1949.

No. 34,899.

*F. Gordon Wright,* for appellant.

*A. M. Joyce* and *Todd, deLambert & McCloud,* for respondent.

MAGNEY, JUSTICE.

Plaintiff, a real estate broker, brought action to recover a $5,000 commission on a real estate listing agreement. The jury returned a verdict in his favor against defendant Helen A. Patterson, who then moved for judgment notwithstanding the verdict or a new trial. Judgment notwithstanding the verdict was granted, and plaintiff appeals.

Defendants, Helen A. Patterson and Sally Engelbert, sisters, were the owners and operators of the Gardner Hotel in Hastings.

---

[1]Reported in 39 N. W. (2d) 162.

They were tenants in common of the realty and operated the hotel as copartners. On August 27, 1947, defendant Patterson signed a written listing agreement employing plaintiff to sell the property. The agreement sets out among other provisions that the asking price be $110,000 and the selling price $100,000; that the down payment be less than 30 percent, plus inventory, with interest at four percent. It further provides in its own language:

"* * * If this property is disposed of within *sixty* days after the above date of this agreement, *Patterson & Engelbert* agrees to pay to the Midwest Hotel Sales Company the sum of 5% of the sales price."

Plaintiff produced one Ralph F. Jerome, as a prospective buyer, who on October 24, 1947, signed an earnest money contract agreement in terms in part as follows:

"Received of Ralph J. Jerome, * * * ($2500.00) as earnest money, and in part payment for the purchase of the following described property * * * [description], which we have this day, through Midwest Hotel Sales Company, our authorized agent sold and agree to convey to Ralph F. Jerome for the sum of * * * ($100,000.00) on terms as follows, vi. [*sic*]:

"* * * ($2500.00) in hand paid as above, and * * * ($25,000.00) to be paid on January 1, 1948, date of taking possession—monthly payments of * * * ($416.66) will be paid on the 1st of each and every month commencing February 1, 1948, plus interest at 4%. The purchaser reserves prepayment privileges up to a total of * * * ($10,000.00) annually. * * * Inventory of liquor and food stocks on hand will be paid for in cash on date of taking possession January 1, 1948. * * *

* * * * *

"It is especially understood and agreed that this sale is made subject to approval by the owner of said premises in writing, * * *."

This instrument was signed by plaintiff and Jerome. It, together with a check for $2,500, was presented to defendant Patterson on October 24 or October 25, 1947. Plaintiff advised her as to the

terms of the earnest money contract. She refused to sign or accept the check, saying:

"* * * Oh, why don't you skip it for sixty or ninety days; we are not interested in selling now."

Plaintiff asked:

"Do I understand then that you don't want to sell the hotel?" to which she replied, "That is right."

She gave no reason why they were refusing to consummate the deal. At the time the check was tendered, Jerome did not have the money in the bank to meet it. The sum of $2,500 was never placed to the credit of that account, "because," as Jerome himself testified, "it was not necessary but I had the money available." If the check had been taken, he said he "would have immediately gone over to the bank there to make it good." Later on he testified: "The check was not given to the girls at the Gardner Hotel; it was given to Mr. Wold and he knew—I told him that I would have to make that check good and it would take a day or two, and he ought to go down and make the offer."

We are of the opinion that plaintiff is not entitled to recover a commission under the facts in this case. When defendant Patterson turned down the earnest money contract and refused to accept the $2,500 check without giving any reason, she was not in possession of all the existing facts. Plaintiff failed to inform her that the check was worthless and that Jerome had no money on deposit in the bank on which the check was drawn. When Jerome handed the check to plaintiff, he told plaintiff that he had no money in the bank to meet it and that he would have to have a day or two to make it good. The fact that the check was worthless was clearly a pertinent fact, and when plaintiff explained to defendant Patterson the details of the earnest money contract and the amount of the check he failed to disclose the very important fact of which he had been made aware, namely, that the check was drawn on a bank in which the drawer had no account. It is reasonable to suppose that if plaintiff had disclosed that the check was drawn on a bank in which

the purchaser had no account the sellers would immediately have refused to accept it on that ground, even though they may have changed their minds about selling at all. In Hare v. Bauer, 223 Minn. 285, 291, 26 N. W. (2d) 359, 362, where as a part of the down payment the agent accepted the buyer's worthless note for $200 without disclosing such fact to his principal, we said:

"* * * The agent must have dealt fairly with his principal, and if he * * * fails to disclose * * * pertinent facts to his principal, he is guilty of fraud and bad faith and forfeits his right to compensation."

Drawing of a check upon a bank in which the drawer has no funds, and uttering it, is a fraud. It amounts to a false affirmation that the money is there to meet it. When another presents the check knowing the drawer has no funds in the bank to meet it, he becomes a party to the fraud of the drawer and he becomes a willing assistant therein. Peterson v. Union Nat. Bank, 52 Pa. 206, 91 Am. D. 146. "Checks" are always supposed to be drawn on a previous deposit of funds. 7 Am. Jur., Bills and Notes, § 9.

Plaintiff owed a duty of loyalty to his principals. That duty included the disclosure to them that the proffered check was worthless. He tendered them the check without such disclosure as an inducement for them to approve and ratify in writing the earnest money agreement signed by Jerome. His conduct constitutes such breach of duty to his principals as to forfeit all right to compensation under the real estate listing agreement.

Order affirmed.

MR. JUSTICE MATSON took no part in the consideration or decision of this case.